UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 09-247-JBC

MONROE GUARANTY
INSURANCE COMPANY, PLAINTIFF,

V. MEMORANDUM OPINION AND ORDER

RADWAN BROWN & CO., PSC, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment, plaintiff Monroe Guaranty Insurance Company's motion to strike, defendant Radwan Brown & Co., PSC's motion to amend Rule 26 disclosures, and motions to exceed allowed page limit by both Monroe and Radwan. For the reasons below, the court will: grant the motions to exceed page limits (R. 32, 41);grant Monroe's motion for summary judgment (R. 33); deny Radwan's motion for summary judgment (R. 30); and deny the remaining motions (R. 38, 40) as moot.

I. Background

This case stems from a contractual dispute between Monroe and Radwan regarding insurance coverage for employee fraud. The material facts are not in dispute. Lillian Mumford, an employee of Radwan, embezzled funds from Radwan's client Kentucky Center for Oral and Maxillofacial Surgery ("Kentucky Center"). Mumford was hired by Radwan in early 2006 as a bookkeeper/payroll clerk. Mumford was tasked by Radwan to do the payroll for Kentucky Center. To do her job, she was given control of

1

Kentucky Center's bank account to the extent "[m]oney in the account was forwarded to [Kentucky Center]'s employees' accounts upon direction to the bank by Radwan Brown." R. 30 at 3. When an employee of Kentucky Center left, however, Mumford kept her on the payroll but directed those funds to be deposited in her own account from June 30, 2007, to March 31, 2009. Mumford did not embezzle any funds from Radwan.

On April 9, 2009, the Shelbyville, Kentucky, Police Department contacted Radwan as part of its investigation of a harassment charge involving Mumford. At that time the police told Radwan that Mumford had been charged with embezzling funds from a former employer that Mumford had not informed Radwan about when she was hired. That same day, Radwan terminated Mumford from her position. Radwan then discovered Mumford's Kentucky Center embezzlement scheme and notified Kentucky Center. Radwan contacted three insurance companies, including Monroe, on April 10 to notify them of the loss and determine whether they would provide coverage. On April 13, 2009, Radwan paid Kentucky Center $132,459.24, to cover the embezzlement.

## II.     Exceeding Page Limits

This court will grant both motions to exceed page limits (R. 32, 41) in order to decide the motions on their merits.

## III.    Cross-Motions for Summary Judgment[1]

Radwan concedes that its claim is only under the Businessowners Special

---

[1] As this court interprets the mutual understanding of the parties "from the language of the contract alone," there is no need to consider the evidence in Appendix A. *K.M.R. v. Foremost Ins. Group*, 171 S.W. 3d 751, 753 (Ky.App. 2005) (quoting *Simpsonville Wrecker Service, Inc. v. Empire Fire and Marine Insurance Company*, 793 S.W.2d 825, 828-829 (Ky.App.1990)). Therefore, the court will deny the motions regarding the appendix as moot.

Property Coverage Form ("Property Form"). The Property Form provides that "money" or "securities" are not covered under the form except as provided in the Money and Securities section or the Employee Dishonesty section. It also provides additional coverage for Forgery and Alteration. Each of the three types of coverage is addressed below.

### A. Money and Securities Coverage

Radwan does not have coverage under the Money and Securities section because Radwan and Mumford did not have "use and custody" of the funds at issue. The Money and Securities section states that Monroe "will pay for loss[2] of 'money' and 'securities' *used* in your business while at a bank or savings institution . . . or any employee having *use and custody* of the property . . . resulting directly from: (1) Theft, meaning any act of stealing . . ." R. 18-2 at 33 (emphasis added). The funds which were embezzled by Mumford were held in Central Bank in the account of Kentucky Center. Mumford completed payroll by downloading a report, emailing it to Kentucky Center for approval and then advising Central Bank to make a direct deposit. The funds never went though Radwan's accounts, nor did Radwan or Mumford have authority to sign checks for Kentucky Center.

While Radwan notified Central Bank to transfer money directly from Kentucky

---

[2]The payment by Radwan to Kentucky Center can constitute a loss. Monroe argues that Radwan was not legally obligated to repay Kentucky Center, and thus the payment cannot be considered a loss under the policy. However, nothing in the policy defines a loss as a legal obligation to pay or excludes loss for which Radwan is not legally liable. Most notably, the policy does not contain a provision prohibiting Radwan from making such payments and allowing Monroe to take over all legal proceedings, a provision which is included in Radwan's Businessowners Liability policy. The plain meaning of "loss" is not limited to loss for which Radwan is legally liable.

Center's account into the accounts of its employees, this does not rise to the level of "use." The plain and ordinary meaning of the word "use" requires a more custodial relationship to the funds. *See K.M.R.* 171 S.W. 3d at 753 ("'We must construe clear and unambiguous terms in a contract according to their 'plain and ordinary meaning.'") (quoting *Nationwide Mutual Insurance Company v. Nolan*, 10 S.W.3d 129, 131-32 (Ky.1999)). Because Radwan is not covered under the Money and Securities section, this court will grant Monroe's motion for summary judgment as to that section.

### B.     Employee Dishonesty Coverage

Radwan is not covered under the Employee Dishonesty section because the embezzlement scheme did not result in a "direct loss." The Employee Dishonesty section states that Monroe "[w]ill pay for *direct loss* of or damage to Business Personal Property and 'money' and 'securities' resulting from dishonest acts committed by any of [Radwan's] employees . . . with the manifest intent to: (1) Cause [Radwan] to sustain loss or damage; and also (2) Obtain financial benefit . . . ." R. 18-2 at 33 (emphasis added).

Under the policy, the Employee Dishonesty section is subject to the terms and conditions in the policy except as provided in the section itself. The policy divides covered property into two categories: business personal property and buildings. While money is not a covered property under the general policy, it is covered property under the Employee Dishonesty section. Money, then, can only be business personal property, which in turn is defined as "including. . . (1) Property you own that is used in your business; [and] (2) Property of others that is in your care, custody or control, except as

4

otherwise provided in Loss Payment Property Loss Condition E.6.d(3)(b);. . . ." R. 18-2 at 14. While "property" is not limited to these definitions, the language informs this court's determination of what constitutes "direct loss." Looking at the contract as a whole, it would be a strained reading to define "direct loss" as any money lost as a result of employee dishonesty, regardless of whether Radwan had control over it. *See Int'l Union of Operating Eng'rs v. J.A. Jones Const. Co.*, 240 S.W.2d 49, 54 (Ky. 1951) ("a contract is to be interpreted as a whole and the entire instrument considered to determine the meaning of each part"). To make such a reading would transform a small section of a policy for property coverage into third-party liability coverage rather than a "direct loss." *See Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 629 (5th Cir. 1998) ("Although employee dishonesty policies may cover the loss of third-party property in the possession of the insured, ... , these policies do not serve as liability insurance to protect employers against tortious acts committed against third-parties by their employees."); *Bonds Co., Inc. v. Federal Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000). A plain reading of the Employee Dishonesty section is that direct loss is loss of property, including money, which was "used" in Radwan's business, or was in Radwan's "care, custody or control." As this court has already determined that the funds at issue were not "used" by Radwan, the remaining issue is whether Radwan was legally liable for the embezzlement because those funds were in Radwan's "care, custody or control."

The embezzlement of funds was not a "direct loss" to Radwan because the funds were never in Radwan's "care, custody or control." As previously discussed, Radwan had the power only to direct the bank to directly transfer funds into the accounts of

employees for payroll purposes. Radwan admits that before it transferred the funds, it regularly sent documents to Kentucky Center for approval. R. 33-8 at 14. This does not rise to the level of "care, custody or control" which would trigger the Employee Dishonesty coverage. Cases cited by Radwan where the insured was found to have suffered a direct loss as a result of an employee's wrongful actions on a third party are instances when the insured *held* the funds at issue or were deposited into accounts with insured. *See First Defiance Finance Corp. v. Progressive Cas. Ins. Co.*, 688 F.Supp.2d 703, 707-08 (N.D.Ohio 2010) (bank found to have suffered a direct loss when employee took funds out of client accounts held at the bank and court concluded that bond language allowed that a theft could create a direct loss); *In re Baker & Getty Fin. Serv., Inc.* 93 B.R. 559 (Bkrtcy.N.D.Ohio 1988), disagreed with on other grounds by *Peoples Bank & Trust Co. of Madison County v. Aetnea Cas. & Sur. Co.*, 113 F.3d 629 (6th Cir. 1997) (held that when employee collected funds on behalf of his employer but neglected to remit such funds to the company, it could be considered direct loss because company was vicariously liable); *Phillip R. Seaver Title Co., Inc. v. Great American Ins. Co.*, 08-CV-11004, 2008 WL 4427582, *4 (E.D.Mich. 2008) (unpublished) (case involving "an employee who embezzles funds from her employer, where the funds are held in trust for another.").

    Further, Radwan cannot recover under the Employee Dishonesty section because the money was not in a location covered under the policy. The policy covers business personal property "located in or on the buildings at the described premises or in the open . . . within 100 feet of the described premises." While the Money and

6

Securities section covers money and securities "used in [Radwan's] business while at a bank or savings institution . . .", the Employee Dishonesty section does not have similar language. Under the policy, the Employee Dishonesty section is subject to the terms and conditions in the policy except as provided in the section itself. Therefore, the Employee Dishonesty section is bound by the limiting language, and the plain language of the policy allows recovery only for money located on Radwan's premises. The embezzled funds were not located on Radwan's property or in Radwan's accounts. Therefore, this court will grant Monroe's motion for summary judgment as to the claim under the Employee Dishonesty section.

    **C.    Forgery and Alteration Coverage**

The Forgery and Alteration section does not cover the loss claimed by Radwan. That section states that Monroe "will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates your or your agent." R. 18-2 at 19. Mumford misdirected funds from Kentucky Center's account into her own. However, her actions did not result in the forgery or alteration of any written promise of payment. While she altered the order to transfer funds after confirmation by Kentucky Center, the document indicating where funds would be transferred was not a **"**check, draft, promissory note, bill of exchange or similar written promise of payment in 'money.'" Therefore, this court will grant Monroe's motion for summary judgment as to the Forgery and Alteration coverage claim.

7

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the plaintiff and defendant's motions to exceed page limits (R. 32, 41) are **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (R. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that the remaining motions are **DENIED AS MOOT**.

Signed on March 22, 2011

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY